IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD A. BRIDGEWATER,

    Petitioner,                  No. CIV-S-02-0971 LKK KJM P

  vs.

ERNIE ROE,

    Respondent.              FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding with an application for writ of habeas corpus under 28 U.S.C. § 2254. In his application, petitioner asserts: (1) his sentence is unlawful because he received more prison time as an aider and abettor than the principal to the crime; (2) his trial counsel rendered ineffective assistance of counsel as a result of a conflict of interest; (3) his appellate counsel rendered ineffective assistance of counsel by not consulting petitioner or trial counsel; and (4) police officers elicited incriminating evidence from petitioner without first informing him of certain Constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Pet. at 5-6.

        On December 20, 2002, the court granted respondent's motion to dismiss this action as time-barred and this case was closed. On May 17, 2004, the Ninth Circuit Court of Appeals reversed, directing this court to allow petitioner to develop his assertion that he is

entitled to equitable tolling of the limitations period based on his purported mental retardation and organic brain damage.

I. Procedural History

Petitioner commenced this action on April 1, 2002 when he filed his application for writ of habeas corpus in the United States District Court for the Northern District of California. The application was transferred to this court on May 6, 2002.

On November 7, 2002, the magistrate judge previously assigned to this case issued findings and recommendations that were adopted on December 20, 2002. They read, in pertinent part, as follows:

> Respondent's June 26, 2002 motion to dismiss petitioner's application as time-bared [sic] is now before the court.
>
> On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) was enacted. The AEDPA amended 28 U.S.C. § 2244(d)(1) . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> The conviction petitioner challenges in this action became final in 1993, well before AEDPA was enacted. Accordingly, the limitations period with respect to that conviction began to run on the day of enactment. See Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1286 (9th Cir. 1997). Petitioner took no action with regard to his petition within the year following enactment of AEDPA. Therefore, this action is time-barred.
>
> Petitioner vaguely asserts that his failure to file his application before he did was the result of extraordinary circumstances beyond his control. Presumably, petitioner is asserting the that [sic] limitations period applicable to his conviction should be equitably tolled. See, e.g., Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir.1999) (equitable tolling of the limitations period for habeas corpus petitions is appropriate only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time). However, petitioner fails to show anything indicating that the limitations period ran out due to any specific extraordinary circumstance which petitioner could not control.

Findings and Recommendations filed November 7, 2002 (docket no. 12) at 1-2.

/////

Following the district court's adoption of the findings and recommendations and dismissal of this action, the Ninth Circuit Court of Appeals reversed and remanded on May 17, 2004. The order of remand provided as follows, in pertinent part:

> . . . [Petitioner] contends that the district court erred in dismissing his petition as untimely without conducting a factual inquiry into his claim that he was entitled to equitable tolling as a result of his mental retardation and organic brain damage. We agree and reverse and remand.
>
> We are guided by our recent decision in *Laws v. Lamarque*, 351 F.3d 919 (9th Cir. 2003). In *Laws*, we held that the prisoner's allegation of mental incompetency in a verified pleading attached to his traverse was sufficient to require the district court to allow discovery or order expansion of the factual record with respect to the issue of equitable tolling of the applicable one-year statute of limitations. We emphasized that the prisoner did not carry a burden of persuasion in order to warrant further investigation into the merits of his arguments for tolling:
>
>> Rather, our cases require only that there be "circumstances consistent with petitioner's petition . . . under which he would be entitled to a finding of an 'impediment' under § 2244(d)(1)(B) or to equitable tolling" for further factual development to be required.
>
> *Id*. at 924 (citation omitted).
>
> In opposing the motion to dismiss, [petitioner] referred to the portion of his July 12, 2001 habeas petition filed in the California Court of Appeal, that explained that any delay in raising his state claims was caused in part because he was "mentally retarted [sic]." A copy of this state petition, which was signed under penalty of perjury, was before the district court. In addition, in his objections to the magistrate judge's findings and recommendations, [petitioner] explained that his "organic brain damage" was the "number one reason for extraordinary circumstances," and that it took him "this period of time to formulate this presentation because of petitioner's condition."
>
> Under *Laws*, [petitioner's] allegation that he was unable to file his petition within the limitations period due to his mental retardation and organic brain damage was sufficient to trigger the district court's duty to conduct a factual inquiry into the merits of his equitable tolling claim.
>
> We reverse the district court's judgment dismissing [petitioner's] habeas petition and remand so that the district court may order

3

such discovery, expansion of the record, or evidentiary hearing as necessary to determine whether [petitioner] is entitled to equitable tolling. We also suggest that the district court appoint counsel for [petitioner.]

Bridgewater v. Roe, No. 03-15203 (9th Cir. May 17, 2004).

Consistent with the Ninth Circuit's order, counsel was appointed on August 31, 2004. An evidentiary hearing centering around whether petitioner should receive equitable tolling of the applicable limitations period due to his mental condition was held on February 28, 2005 and April 12, 2005. Petitioner testified, as did another inmate who acted as his "writ writer" at one point, David Paul Ruff. Ricardo Weinstein, Ph.D., who specializes in Clinical, Forensic Neuropsychology also testified. Following the hearing, the court directed that petitioner indicate whether he ever sought the assistance of private counsel after completion of direct review in the state courts. Petitioner filed a declaration in response to the court's order on February 13, 2007; on February 23, 2007, respondent filed a reply.

II. Chronology of Petitioner's Post-Conviction Filings

As noted above, petitioner's conviction became final in 1993, after his conviction for first degree murder on December 5, 1991, and conclusion of his direct appeal on July 1, 1993. Resp't's Mot. to Dismiss filed June 26, 2002 (Mot. To Dismiss) at 2; id., Exs. 1 & 2 at 2, 7. AEDPA took effect on April 24, 1996, and started the running of the one-year statute of limitations period applicable to petitioner's filing of a federal habeas petition.

On February 27, 1997, petitioner signed a letter to his state appellate lawyer, Steven Temko, requesting information about his case and whether a habeas petition had been filed. 2/28/05 RT 51-52, 62-63; 4/12/05 RT 12-14. On March 1, 1997, Temko responded, providing some information about federal habeas and the limitations period. See Pet., Ex. C-6 (letter dated March 1, 1997).[1] On June 3, 1997, petitioner filed a habeas petition in the California

---

[1] This letter references a one page handout, which is not attached to the petition. Petitioner testified he did not recall receiving the attachment. 2/28/05 RT 37.

4

Supreme Court.  See Mot. to Dismiss, Ex. 8 (petition signed June 3, 1997).  On October 29, 1997, the Supreme Court denied the petition, Pet., Ex. C-7, but petitioner, who was transferred to a different prison in November 1997, did not receive notice of this denial until "several months later." 2/28/05 RT 9-11.

Between late 1997 and the year 2000, petitioner attempted to conduct some of his own research in an effort to determine what he needed to do next.  2/28/05 RT 13, 59.  On May 11, 2001, petitioner filed a habeas petition in Butte County Superior Court.  Mot. to Dismiss, Ex. 9.  This petition was denied on May 17, 2001.  Mot. to Dismiss at 3, Ex. 9; Pet., Ex. C-7. Petitioner re-filed his habeas petition in the California Court of Appeal on July 16, 2001.  Mot. to Dismiss, Ex. 10 at 1-44.  The appellate court petition was denied on August 30, 2001.  Id., Ex. 11.  On September 14, 2001, petitioner filed a second petition in the California Supreme Court. Id., Ex. 10 at 45.  The second Supreme Court petition is virtually identical to his Superior Court petition, with the exception that some of the documentation attached to the Supreme Court petition is different.  This petition was denied on February 27, 2002 for, among other reasons, untimeliness.[2]  Pet., Ex. C-7 at 5.

As noted, petitioner commenced this action on April 1, 2002.

III. Equitable Tolling And Mental Incompetency

It is undisputed that petitioner did not file his habeas petition in this court within the AEDPA statute of limitations period, which ran out in April 1997.  It also is undisputed that unless petitioner is entitled to some amount of equitable tolling, this action is time-barred as there is no statutory basis to toll the limitations period before it ran out.  Between April 1997 and April 2002, petitioner would be entitled to at least some degree of statutory tolling, for among

/////

---

[2] In rejecting petitioner's state habeas application, the California Supreme Court cited In re Robbins, 18 Cal.4th 770, 780 (1998).  This citation to Robbins reflects a finding of untimeliness.  Thorson v. Palmer, 479 F.3d 643, 645 (9th Cir. 2007).

5

1  other things, the pendency of at least some of his state court habeas petitions.[3]  Petitioner's
2  counsel argues, however, that given the chronic nature of petitioner's mental limitations,
3  petitioner should benefit from equitable tolling of the entire period because he was never able to
4  file any habeas petition on his own.  Respondent's counsel counters that, even conceding
5  petitioner's limited mental capacity, he had sufficient ability to file the basic court documents
6  needed to advance his case and thus does not qualify for tolling.

7     Mental incompetency may equitably toll the limitations period applicable to
8  § 2254 actions because mental incompetency is an extraordinary circumstance beyond a
9  prisoner's control.  Laws, 351 F.3d at 923.  In determining whether mental incompetency exists,
10 the court engages in a "highly fact dependent" evaluation of the record.  Id. at 922 (citing
11 Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000)).  In order for mental incompetence
12 to serve as a basis for tolling of the limitations period it must have been the actual cause of the
13 untimeliness of the habeas petition.  Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001)
14 ("extraordinary circumstances" must be the "but for and proximate cause of [ ] untimeliness");
15 see also Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005), as amended, 447 F.3d 1165 (9th
16 Cir. 2006) (analyzing whether causal connection between mental deficiencies and late filing
17 existed in light of specific facts of case).  It is petitioner's burden to show equitable tolling is
18 available.  Gaston, 417 F.3d at 1034.

19 IV.  Summary of Key Testimony at Hearing

20    At the evidentiary hearing, petitioner testified regarding his efforts to pursue
21 habeas relief in both state and federal court.  Some of petitioner's testimony, while at times
22 sketchy, concerned his efforts to obtain help from other inmates because petitioner does not have
23 the knowledge or the mental capacity to pursue habeas actions on his own.  2/28/05 RT 13-18,

---

[3] Title 28 U.S.C. § 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

20, 59. At the same time, petitioner stated that he shied away from asking many people for help because they made fun of him, calling him names such as "moron," "idiot," and "retard." 2/28/05 RT 13, 17, 24-25. Petitioner testified that he attempted to conduct research in preparing his habeas petitions, but he simply could not understand how to perform this task. 2/28/05 RT 13:19-16:11. To the extent he did prepare any legal documents himself, he did so by trying to match the text from his prior appeals with the contents of books he would randomly request from the law library. 2/28/05 RT 14-16. He described making many trips to the library in an effort to find the books that contained the key words others had told him he needed to be looking for. Id. At no time did he understand the difference between a state and federal petition. 2/28/05 RT 16-17.

David Paul Ruff, who petitioner met in 1997 when they became cellmates, was the first person to tell him he needed to file a habeas petition. 2/28/05 RT 47. It was Ruff who wrote a letter to petitioner's counsel, seeking information needed for a petition. 2/28/05 RT 51-52; 4/12/05 RT 12-13. Ruff then volunteered to prepare a petition for him. 2/28/05 RT 41-42.

Ruff himself testified he was petitioner's "cellie" for about a year in the 1997 time frame. 4/12/05 RT 5. Ruff testified he tried to help petitioner because he "didn't know nothing," and that he was the one who prepared petitioner's first state habeas petition in its entirety. 4/12/05 RT 6, 11-12, 15, 17; cf. 2/28/05 RT 57-58, 61-63 (petitioner's testimony that it was Ruff who decided what issues to include, and petitioner did not know why he did). Petitioner only signed the petition at Ruff's direction. 4/12/05 RT 15-16; cf. 2/28/05 RT 63-66.

Similarly, after petitioner met fellow inmates Daniel Wilkins and Gordon Acker in 2000, after several years at a new prison, they agreed to help him. 2/28/05 RT 13-18, 20. While petitioner wrote out himself the petition he filed in Butte County Superior Court in May 2001, he did so based on what Wilkins and Acker told him to do. 2/28/05 RT 14-18. When petitioner re-filed his petition in the California Court of Appeal in July 2001, it was because Wilkins and Acker told petitioner he had to file his petition at all three levels of California's

7

courts. 2/28/05 RT 16, 19. When he filed something in federal court, it was because Acker, his bunkmate at the time, told him to do so. 2/28/05 RT 13-21. Acker wrote down for him where to get the right form from the library; once he got the form he copied from his handwritten state petition to complete it. Id. at 21. Acker also was the one who told him he needed to file a Notice of Appeal concerning this court's granting respondent's motion to dismiss, 2/28/05 RT 180, and who told him what to do in response to the court's Findings and Recommendations of November 2002. 2/28/05 RT 22, 180-181. While petitioner wrote these documents out himself, it was Acker who helped him prepare them. 2/28/05 RT22, 180-181.

Dr. Weinstein testified at length regarding petitioner's mental state and his ability to prepare an application for writ of habeas corpus under 28 U.S.C. § 2254. After reviewing documents relating to petitioner's mental health history and conducting interviews with petitioner, Dr. Weinstein formed the opinion that petitioner simply does not have the mental ability to follow the procedures involved in litigation without assistance. 2/28/05 RT 85:14-21. In a nutshell, Dr. Weinstein opined, petitioner's frontal lobes "don't work," resulting in "problems with working memory, attention, concentration, comprehension and understanding of abstract concepts." 2/28/05 RT 99:20-100:9, 105:15-106:3. Dr. Weinstein indicated petitioner also does not possess the ability to comprehend material he reads in such a way that allows him to use the information in a "goal directed manner." 2/28/05 RT 83:11-17, 85:2-4, 94-97. Put another way, petitioner cannot selectively decide what information is important and what information is not in attempting to achieve certain goals such as the preparation of a habeas application. 2/28/05 RT 96:12-97-4. He is suggestible, in that he will sometimes say just what he thinks others want him to say, not because he fully understands what he is saying. 2/28/05 RT 83:23-24. Regarding understanding, petitioner has the ability to understand individual words, but not necessarily the concepts they convey when used together. 2/28/05 RT 81-82, 89-90, 104-105, 106:4-16. Petitioner's documented episodes of depression only exacerbate his inability to perform even basic tasks. 2/28/05 RT 116-118. Reviewing grades and test scores petitioner

1  received for classes in prison between 1992 and 2001, Dr. Weinstein explained that even when
2  petitioner achieved adequate looking grades, most of his grades and scores were well below
3  normal and consistent with the diagnosis of mild mental retardation. 2/28/05 RT 111-118.  In
4  reaching this conclusion, Dr. Weinstein noted that his review of petitioner's prison educational
5  records indicated that while petitioner has the vocabulary of a high school graduate, his ability to
6  comprehend what he reads is near the third grade level. 2/28/05 RT 112.  Also, at times petitioner
7  could not complete his work, which Dr. Weinstein found consistent with petitioner's chronically
8  depressed state.  2/28/05 RT 114-115. Dr. Weinstein also noted the "striking similarity" between
9  his conclusions and those of a Dr. Edwards, a clinical psychologist who testified at petitioner's
10 trial in 1991.  2/28/05 RT 82, 93, 140.

11          Respondent's counsel elicited some testimony during cross-examination regarding
12 petitioner's ability to prepare and file some documents, notably his federal motions for the
13 appointment of counsel; even under cross-examination, however, petitioner's abilities in this
14 regard came across as significantly limited.  See, e.g., 2/28/05 RT 33:8-14, 34:23-35:3.  In
15 closing, respondent's counsel argued that petitioner's admissions regarding the documents he did
16 prepare undercut his claim of inability to prepare filings as required, with the result that
17 petitioner had not met his burden of establishing cause for equitable tolling.  4/12/05 RT 188-
18 209.

19          In his post-hearing filing, petitioner explained how he completed and filed a
20 request for the appointment of counsel in this court after finding a form-request in a law book at
21 his prison.  Pet'r's February 13, 2007 Decl. at 2:15-23; see also Response to Pet'r's Decl. filed
22 February 23, 2007 at 2-13.  Based on a review of petitioner's work product, it is apparent that
23 when he filled out the form, petitioner merely had to fill in his name, the names of the parties and
24 the date, and he also had to obtain a witness.  See Docket entry no. 1 at 5.  Petitioner also
25 indicated he completed a second request for the appointment of counsel.  However, he indicated,
26 /////

9

and a review of the record confirms, that petitioner merely hand-copied, word for word, his first request and filed the copy. See Docket entry no. 18.

IV. Findings

Based on the testimony provided at the evidentiary hearing, the court finds petitioner did not have the mental capacity to litigate in habeas on his own.

The court's determination in this regard rests on the court's finding petitioner's testimony to be credible in all material respects. Jaramillo v. Stewart, 340 F.3d 877, 884 (9th Cir. 2003) (this court authorized to make credibility determinations where factual disputes arise in the context of an evidentiary hearing held in § 2254 proceedings). The court observed petitioner closely during his testimony, noting his demeanor and the content of his responses to questions. Overall, the court noted a somewhat dull affect. While petitioner's verbal skills were sufficient, generally, to provide a fairly ready response to most of the questions put to him, he regularly would have to ask for clarification and would seem confused about the meanings of certain basic words, including, for example, "transcripts" and "briefs." Petitioner seemed to want to provide responses to the questions he was asked, both by his own counsel and by respondent's counsel. At times, it appeared he would provide a "yes" or a "no" response based on what he thought the right answer should be. During cross-examination, he did not appear defensive or evasive and did not appear to strain to provide a consistent version of events.

Dr. Weinstein's unrebutted testimony provided a credible explanation for the manner in which petitioner testified, and in which he went about attempting to litigate his case. The explanation and Dr. Weinstein's conclusions compared favorably with the court's own, inexpert observations.

Given the court's credibility determination, the court finds that petitioner's counsel's characterization of petitioner as never having been able to prepare and file anything on his own is supported by the record developed through hearing. The letter petitioner signed and sent to his prior attorney, Mr. Temko, in February 1997 was suggested and written by Mr. Ruff.

1  The habeas petition filed in the California Supreme Court in June 1997 was drafted entirely by
2  Mr. Ruff, who volunteered for this task and then instructed petitioner to sign it when it was done.
3  The Butte County Superior Court petition filed in May 2001 was written out by petitioner only
4  after fellow inmates Acker and Williams told him what to do. He also filed the state appellate
5  court petition in July 2001 and his second state Supreme Court petition in September 2001 based
6  on Acker and Williams telling him to do so.

7  In this federal matter, petitioner filed the initial petition after his bunkmate
8  Gordon Acker told him he needed to. The bunkmate wrote down exactly where petitioner would
9  find the federal petition form in the library. Once he had the form, petitioner simply copied his
10 state petition onto the form. At the same time he located the habeas petition form, petitioner
11 found the form for requesting counsel, which he copied and filled in. When petitioner filed his
12 Notice of Appeal to the Ninth Circuit, it was because Acker told him he should. The objections
13 he filed in November 2002 also reflected what Acker told him he should do.

14 Even if petitioner prepared the second request for counsel filed in this court
15 without specific direction from anyone else, the request is a mere hand-copy of his first request.
16 Moreover, it does not contain the same kind of information called for by a habeas petition and
17 does not reflect petitioner's ability to handle any more complex matters on his own. His having
18 prepared it is not inconsistent with Dr. Weinstein's conclusion that petitioner is not able to
19 conduct legal research or comprehend and retain material he has read so that the material's
20 content can be used at a later time for an intended purpose.

21 Significantly, there is no indication petitioner's incapacity has been limited to
22 discreet periods of time; rather it has been a chronic condition enduring for the entire time
23 relevant to the timely filing of a habeas petition. Specifically, the time periods covered by his
24 testimony, as well as that of David Ruff and Dr. Weinstein, extend from early 1997 through
25 November 2002.
26 /////

1 	Respondent asserts the court should deny petitioner equitable tolling based upon
precedent established in Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005), as amended, 447
F.3d 1165 (9th Cir. 2006).  There, a trial court decision to deny equitable tolling based on alleged
mental and physical impairments was upheld by the Ninth Circuit because petitioner failed to
explain why his mental and physical condition was worse at a time when he was not pursuing
state court remedies in an effort to get to federal court compared to those times when he was
pursuing state court remedies.  Id. at 1034-35.  This case is distinguishable for two reasons.
First, nothing before the court suggests petitioner on his own pursued state court remedies, or any
other of the meaningful actions that are necessary precursors to filing in this court.  Also, in this
case, there is clear testimony from a medical expert, and that expert's unrebutted opinion,
regarding petitioner's chronic debilitating condition.  Cf. Gaston. 417 F.3d at 1035 (reference to
"numerous physicians' reports and affidavits" that apparently supported district court's
conclusion that petitioner's mental condition during the critical time period was "not
significantly worse than his condition immediately before or after").

	While the evidence before the court does suggest petitioner may have been
capable of seeking licensed counsel to help him bring this action, petitioner had no means to pay
for counsel and nothing before the court indicates that before petitioner filed this action he had
any legitimate chance of obtaining pro bono counsel.  Pet'r's February 13, 2007 Decl. at 3:12-17.

	Under Laws, petitioner's mental limitations coupled with his inability to pay for
counsel constitute a set of extraordinary circumstances beyond petitioner's control that made it
impossible for petitioner to file this action on time.  Petitioner is entitled to equitable tolling of
the applicable limitations period because his mental incapacity was the actual cause of his failing
to timely file.  Therefore, respondent's motion to dismiss this action as time-barred should be
denied.

/////

/////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion that this action be dismissed as time-barred be denied; and

2. Respondent be ordered to file his response to petitioner's application for writ of habeas corpus within twenty days of any adoption of the foregoing findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 24, 2007.

U.S. MAGISTRATE JUDGE

1
brid0971.157(b)