IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

RICHARD BRIDGEWATER,

    Petitioner,               No. CIV-S-02-0971 LKK KJM P

    vs.

BRIAN HAWS,

    Respondent.           FINDINGS AND RECOMMENDATIONS

          /

        Petitioner is a California prisoner proceeding with an application for writ of habeas corpus under 28 U.S.C. § 2254. In 1991, petitioner was convicted of two counts of first degree murder in Butte County. For each conviction petitioner received a sentence of life imprisonment. In this action, petitioner presents two grounds for relief. First, he asserts his sentence is unconstitutional because, even though he was an aider and abettor to first degree murder, he received a longer sentence than the principal. He also claims his convictions must be reversed because his trial counsel had a conflict of interest that deprived petitioner of the effective assistance of counsel guaranteed by the Sixth Amendment.

        On February 10, 2009, the undersigned filed findings and recommendations, which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within twenty days. Petitioner filed

1

objections to the findings and recommendations. The respondent did not file any objections, nor did he respond to the objections filed by petitioner. By order of March 25, 2009, the court vacated the findings and recommendations of February 10. These findings and recommendations address the merits of the habeas petition, taking into account plaintiff's objections to the February 10 findings and recommendations.

I. Standard of Review

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

/////
/////
/////
/////
/////
/////

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 551 U.S. 112, 118-19 (2007).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

"Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been

1  "clearly established" and the reasonableness of a particular application of that law.  Duhaime v.
2  Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003),
3  overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at
4  782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court
5  precedent is misplaced).

6        In his objections to the February 2009 Findings and Recommendations, petitioner
7  argues for a less deferential standard of review than the one given in Himes.  Relying on Lewis v.
8  Mayle, 391 F.3d 989, 996 (9th Cir. 2004), petitioner states that because the California Supreme
9  Court denied his claims on procedural grounds, the court should employ a de novo standard of
10 review.  See Objections at 2-4; Lewis, 391 F.3d at 996 ("De novo review, rather than AEDPA's
11 deferential standard, is applicable to a claim that the state court did not reach on the merits.").

12       The California Supreme Court's decision in this case presents something of a
13 middle ground between Himes and Lewis.  The decision is a one-sentence order denying the
14 petition, followed by a string of citations to cases that California courts typically rely upon when
15 they deny a habeas petition on procedural grounds.  See Original Pet., Ex. C-7.  The California
16 Supreme Court's order is utterly devoid of any analysis, procedural or otherwise, and can in no
17 way be construed as a "reasoned decision."  In this respect, the order appears to warrant review
18 using the "objectively unreasonable" standard articulated in Himes.  On the other hand, the string
19 cite following the California Supreme Court's summary denial leaves little question that the
20 decision was based on some unspecified procedural bar to habeas relief and not on the merits of
21 the constitutional claims presented in the habeas petition.  In this latter respect, petitioner is
22 correct that the de novo review called for in Lewis could be applied in this case.

23       Assuming without deciding that Lewis applies here, there is no merit in the
24 petitioner's claims as explained below.  Applying either the Himes or the Lewis standard, in
25 other words, the result is the same: the petition should be denied.
26 /////

## II. Factual Background

On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's trial, and relevant at this juncture, as follows:

> Around 8:30 on the night of March 22, 1990, defendant and Alford Coker were at the Brush Creek Bar when Coker and the bartender, David Lewis, became involved in an argument. Lewis threw defendant and Coker out. As the two were leaving, Coker shook his fist at Lewis and said, "We'll be back. We'll get you. You can count on it." Defendant and Coker then drove away in a black Cadillac.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Between 9 and 10 that night, Coker returned to the Brush Creek Bar and sat on a barstool. Defendant soon followed. He was carrying a shotgun in each hand and, as he entered the door, ordered everyone on to the floor. Jay Tapp, [footnote omitted] a bar patron, observed this and bolted toward the back door. As he did, he turned and saw Coker draw a handgun and heard Coker say, "Don't reach for the gun, Dave." Tapp heard several shots in rapid succession as he was leaving the bar.
>
> Tapp ran to a nearby house for help and returned minutes later, Defendant and Coker were gone. Lewis was found on the floor behind the bar, dead, with multiple gunshot wounds from Coker's .38 caliber revolver. A bar patron, Richard Haley, was found face down on the ground in the parking lot, also dead, also with multiple gunshot wounds from Coker's gun. Neither man was hit by shotgun pellets. The bar and the wall behind the bar, however, were damaged by shotgun blasts, and a spent shotgun shell was found by the front door.
>
> Defendant did not deny his involvement in this but claimed it was coerced by Coker:
>
> Defendant was down and out when he met Coker a couple of months earlier, and Coker took defendant in.
>
> The night of March 22, 1990, defendant and Coker were at the Brush Creek Bar when Coker got into an argument with Lewis, the bartender. Defendant went outside and got into Coker's car. Coker soon followed, angry and threatening "them punks."
>
> Coker drove to his house. He was "ranting and raving and cussing and running around." Coker got two shotguns and told defendant to take them. Defendant complied because he feared Coker "was going to kill me. I was scared for my life if I didn't do what he said, he's [going to] shoot me." Defendant said that on a prior occasion Coker had threatened him at gunpoint.

5

>Coker drove the two back to Brush Creek. Coker told defendant to wait in the car for a few seconds, then to come into the bar with the shotguns and tell everybody to hit the floor. Defendant told Coker he did not want to do that. Coker threatened to kill defendant if he did not.
>
>Coker, with a .38 caliber handgun tucked into his waistband, entered the bar. As directed, defendant entered soon after with the shotguns. Coker, Lewis, Haley and Tapp were there. Tapp ran out the back door. Lewis reached for a gun behind the bar, and Coker shot him. Coker then shot Haley, and Haley ran out the back door. Coker followed and shot Haley in the back as Haley lay face down on the ground. Defendant did not remember how the shotguns discharged.
>
>Defendant denied he intended to hurt anyone in the bar that night.
>
>A forensic psychiatrist testified that, in his opinion, Coker was disordered from antisocial personality or from substance abuse.
>
>A psychologist testified that, in his opinion, defendant is borderline mentally retarded and perhaps brain damaged.

Resp't's Lodged Doc. #4 at 2-4.

III. Analysis of Claims

As explained above, no state court issued a reasoned decision with respect to petitioner's claims. Resp't's June 6, 2002, Mot. to Dismiss, Exs. 9-11; Original Pet., Ex. C-7. The California Supreme Court appears instead to have relied on an unspecified procedural bar as the basis for denial. See id.

   A. Sentencing Disparity

Petitioner's first argument is that his sentence violates the Constitution because he received a longer sentence than Alford Coker, the person who actually killed the victims in this case.[2] Am. Pet. at 8-10. Petitioner fails to point to any authority, Supreme Court or otherwise, supporting the proposition that petitioner, as an aider and abettor, must have received a lesser sentence than the principal. Rather, the import of the most closely analogous authority is to the

---

[2] According to the parties, Coker was sentenced to a total of 50 years-to-life imprisonment. Am. Pet. at 10; Answer at 12 n.22.

contrary, as respondent has correctly observed. Harmelin v. Michigan, 501 U.S. 957, 996 (1991) (confirming narrow proportionality principle applicable under Eighth Amendment to terms of imprisonment); Pulley v. Harris, 465 U.S. 37, 42 & n.5 (1984) (in capital case, rejecting intercase review as "hardly . . . an established practice of proportionality review"). With no legal authority to support it, this claim cannot survive an analysis under the "objectively unreasonable" standard of Himes or the de novo standard of Lewis. Therefore, petitioner's claim is without merit.

      B.   Ineffective Assistance of Counsel

Petitioner's second argument is that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment because his trial counsel represented petitioner while having a conflict of interest. Specifically, petitioner asserts that his trial counsel's ex-wife was friends with both of the victims, and that trial counsel had previously worked as a deputy district attorney for the Butte County District Attorney's Office, and had run for the Office of Butte County District Attorney. Am. Pet. at 10-11. Petitioner neither avers nor proves any more than these facts to suggest the possibility of a conflict; nothing before the court shows that a conflict in fact existed. A mere "possibility of conflict is insufficient to impugn a criminal conviction." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Moreover, petitioner fails to show that any conflict of interest, if one actually existed, affected trial counsel's performance in any way. Strickland v. Washington, 466 U.S. 668, 692 (1984). Such a deficient showing cannot survive an analysis under the "objectively unreasonable" standard of Himes or the de novo standard of Lewis. The petitioner is not entitled to relief on this claim.

III.   Other Requests

Petitioner also requests discovery, an evidentiary hearing and expansion of the record. He has provided no support for these requests, as required by the Rules Governing Section 2254 Cases in the United States District Courts. Therefore, the requests will be denied.

/////

/////

1       For the foregoing reasons, the court will recommend that petitioner's application
2 for writ of habeas corpus be denied and that his requests for discovery, expansion of the record,
3 and evidentiary hearing also be denied.
4       Accordingly, IT IS HEREBY RECOMMENDED that:
5       1. Petitioner's application for a writ of habeas corpus be denied; and
6       2. Petitioner's requests for discovery, expansion of the record, and evidentiary
7 hearing be denied.
8       These findings and recommendations are submitted to the United States District
9 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
10 days after being served with these findings and recommendations, any party may file written
11 objections with the court and serve a copy on all parties.  Such a document should be captioned
12 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
13 shall be served and filed within five days after service of the objections.  The parties are advised
14 that failure to file objections within the specified time may waive the right to appeal the District
15 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
16 DATED: September 13, 2009.

                                          U.S. MAGISTRATE JUDGE

4
brid0971.157